J. S12043/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.E.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.W., FATHER | : | No. 1745 MDA 2017 |

Appeal from the Decree, October 2, 2017,
in the Court of Common Pleas of Snyder County
Civil Division at No. OC-0003-2017

BEFORE: LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED APRIL 04, 2018**

S.W. ("Father") appeals from the October 2, 2017 decree entered by the Court of Common Pleas of Snyder County, granting the petition of S.E. ("Mother") and involuntarily terminating Father's parental rights to minor male child, J.E.W., born in January of 2011, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1) and (b). After careful review, we reverse and remand with instructions.

The trial court provided the following relevant procedural history:

> [Mother] filed her petition for involuntary termination of parental rights on January 6, 2017. In her petition, she claimed that [Father] has evidenced a settled purpose of relinquishing his parental rights to [J.E.W.] or has refused or failed to perform his parental duties. On February 6, 2017, the [trial c]ourt appointed Brian Kerstetter, Esquire, as counsel for [J.E.W.] and scheduled a pretrial conference for February 27, 2017. [Father] filed an application for appointment of counsel on or about March 1, 2017. The [trial] court approved [Father's] application and appointed Brian Ulmer, Esquire, as counsel for [Father.] The [trial

court] conducted its pre-trial conference on August 22, 2017. The [trial c]ourt conducted the hearing on the petition for involuntary termination of parental rights on October 2, 2017. [Father] did not appear at the hearing on October 2, 2017. The [trial c]ourt agreed to hold the record open to give counsel an opportunity to provide documentation to the [trial c]ourt that [Father] was not able to attend the hearing for medical reasons. Counsel did not supply any information to the [trial c]ourt that would excuse his non-appearance at the hearing on October 2, 2017. Nor did he request the opportunity to present evidence on behalf of [F]ather. On November 1, 2017, [Father] filed a Notice of Appeal from the [trial c]ourt's decision of October 2, 2017.

Trial court opinion, 11/17/17 at 1-2.

Father filed a concise statement of errors complained of on appeal on November 1, 2017. On November 17, 2017, the trial court filed its opinion pursuant to Pa.R.A.P. 1925(a).

Father raises the following two issues on appeal:

1.  Should the Trial Court have denied termination under 23 Pa.C.S.A. Section 2511(a)(1) as there was no showing of a settled purpose to relinquish a parental claim and Father's filing of a custody action rebutted the notion of a refusal or failure to perform parental duties?

2.  Should the Trial Court have denied termination and ruled that the Petition under 23 Pa.C.S.A. Section 2511(a)(1) failed as Mother did not provide Father with necessary contact information?

Father's brief at 5.

When reviewing a court's grant of a petition involuntarily terminating parental rights, we are held to the following standard:

> [O]ur standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***In re: R.I.S.***, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has often been stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.*** Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, bias, or ill-will. ***Id.***

***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012) (citations omitted).

In his first issue, Father avers that the trial court erred when it determined that there was a "showing of a settled purpose to relinquish a parental claim and Father's filing of a custody action rebutted the notion of a refusal or failure to perform parental duties." (Father's brief at 9.) Put another way, Father challenges the sufficiency of the evidence to support the involuntary termination of his parental rights pursuant to Section 2511(a)(1).

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. ***In re Adoption of R.J.S.***, 901 A.2d 502, 510 (Pa.Super. 2006). In addition, Section 2511 does not require the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of

relinquishing parental claim to a child or fails to perform parental duties.

> *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998).
>
>> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).
>
> *Id.* at 92 (citation omitted).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008).

Regarding the definition of "parental duties," this court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent "exert himself to take and maintain a place of importance in the child's life."
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and

> not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (internal citations omitted).

The trial court made the following determination of fact following the termination of parental rights hearing:

> [Mother] testified that [F]ather has had no contact with the child since November of 2015. Father has not sent the child any gifts, cards, or, in any other way, shown any interest in the child since that time. He has not provided any financial support.[1] . . . He has not contacted [M]other about his child even though for some months he knew where she worked and could have contacted her at her place of employment. He also knew [M]other's current address because he served court papers on her at that address in connection with a complaint for custody that he filed in Union County. Mother also testified that [F]ather had her telephone number and that it was the same number she had for up to ten years. She also testified that [F]ather would text her at that phone number and that she knew it was [F]ather texting because he would mention [J.E.W.] in the texts.

---

[1] Mother testified that she did receive financial support that was automatically withdrawn from Father's social security check by the Social Security Administration. (Notes of testimony, 8/22/17 at 10-11.)

Trial court opinion, 11/17/17 at 2-3.

None of Mother's testimony was contradicted during the hearing, as Father failed to appear. The trial court kept the record open for ten days following the hearing in order to provide Father with the opportunity to provide an explanation for his failure to appear and to provide testimony. (Notes of testimony, 8/22/17 at 39.) Father failed to provide any further information to the trial court.

On appeal, Father avers that his filing of a custody action in Union County rebuts Mother's testimony and establishes that he attempted to perform parental duties and "wished to remain present in [J.E.W.'s] life." (Father's brief at 10.) This argument falls far short of the mark. The record reflects that Father filed a complaint in custody in Union County in August of 2016. (Notes of testimony, 8/22/17 at 22.) We agree with the trial court's determination, however, that Father's filing of a custody complaint was not sufficient to rebut Mother's testimony.

> Father did file a custody complaint in Union County and appeared at mediation. He did not appear at a custody conference. Subsequently, the court dismissed his custody complaint. When the court denied his Motion for Reconsideration of the dismissal of his complaint, he failed to take any follow-up action. He did not file an appeal. Nor did he file a new custody action.

Trial court opinion, 11/17/17 at 3.

Accordingly, we find that the record supports the trial court's determination that Mother has proven by clear and convincing evidence that

in the six months prior to the filing of her petition for termination of parental rights, Father had failed to perform parental duties. Therefore, Father's first issue is without merit.

In his second issue for our review, Father contends that Mother did not provide him with necessary contact information. We agree with the trial court's determination that this claim is belied by the testimony of record. As stated above, Mother's testimony revealed that Father had Mother's telephone number, knew where she worked, and also knew her current address—which he used to serve Mother with his complaint for custody. (**See** trial court opinion, 11/17/17 at 3.) Moreover, Father provided no evidence of record to the trial court that any alleged failure by Mother to provide him with necessary contact information prevented him from attempting to contact J.E.W. in any way. Accordingly, Father's second issue is without merit.

We must also consider whether termination of father's parental rights is proper under Section 2511(b). The trial court, however, made no findings under Section 2511(b).

We find that the trial court did not abuse its discretion when it determined that Mother presented sufficient evidence to terminate Father's parental rights under Section 2511(a)(1). We, however, are constrained remand to the trial court "for . . . subsequent findings as to the effect of termination on the needs and welfare of [J.E.W.] under Section 2511(b)[,]" based on the information of record. **In re B., N.M.**, 856 A.2d 847, 859

(Pa.Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). However, "[i]n cases **where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists**. The extent of any bond analysis, therefore, necessarily depend on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (emphasis added) (citation omitted). This determination, however, must be made on the first instance by the trial court.

Order reversed. Case remanded for the trial court to produce a supplemental opinion including Section 2511(b) determination based on the testimony of record within 15 days of the filing of this memorandum. Jurisdiction retained.